IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LOUISE REMBERT,**

        **Plaintiff,**

v.                  //    CIVIL ACTION NO. 1:07CV143
                                  (Judge Keeley)

**THE CADLE COMPANY,**

        **Defendant.**


## MEMORANDUM OPINION/ORDER DENYING MOTION TO REMAND

### I. Introduction

Before this Court is plaintiff Louise Rembert's ("Rembert") motion to remand. For the reasons stated below, the Court **DENIES** the motion.

### II. Statement of Facts

According to the complaint, on or about October 1986, Rembert was approached by two men from Pittsburgh offering to do home repairs. They agreed to remodel the bathroom in her basement for $11,700 payable to the order of Tandem Development, Inc. She alleges that no financing papers were presented at that time.

Rembert alleges that the work was done in an unworkmanlike manner, including using Rembert's own coats and clothes as insulation without her knowledge or consent. After the work was completed, she alleges that she signed a deed of trust for $11,700. She alleges that an interest rate was never mentioned to her and was not contained in any writing. Rembert also alleges that,

subsequently, she began being charged an excessive interest rate on the debt, such that her total indebtedness is continually increasing, instead of decreasing, despite making unreasonably large payments.

At some point during the late 1980s, she alleges that The Cadle Company ("Cadle") took assignment of rights under the note and deed of trust. Since that time, she alleges that Cadle has charged her in excess of 17% interest, which she has continued to pay. She also alleges that Cadle has refused to turn over copies of the documents which justify this interest rate. Cadle denies the allegations.

On December 20, 2007, Rembert filed a motion to remand. Rembert alleges that the amount in controversy does not exceed $75,000. Consequently, she argues, that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332.

Rembert indicates that the original amount of the mortgage was only $11,700 and that the current balance due on the mortgage is only $30,000. Although Rembert does argue for statutory violations which carry a penalty of $4,000 each, she asserts that the number of those violations appears to be low enough that the total recovery would still be under $75,000. She further stipulates that the total recovery in this case could not exceed $74,500.

In addition, Rembert is seeking statutory damages of $4,000 per statutory violation. Although Rembert does not specify how many violations allegedly occurred, Rembert claims that Cadle (1) wrongfully induced her to enter into the loan; (2) added improper charges to the loan and (3) acted wrongfully in collecting the debt. Consequently, at a minimum, these statutory violations would aggregate to $12,000.

On January 3, 2008, Cadle filed a response arguing that the amount in controversy requirement has been met in this case. It argues that the contract Rembert seeks to avoid was worth $27,853.92 at the time of its execution and that the amount due on the contract in August 2006 was $24,306.58 with interest accruing at $4.85 per day. It, therefore, asserts that the compensatory damages alone would exceed $25,000.

Cadle also argues that, in another predatory lending case, plaintiff's lead counsel asserted that the appropriate market rate for his services was between $300 and $450 per hour. He actually received $225 per hour in that case, with other attorneys receiving different billing rates. Cadle noted out that, in another predatory lending case, plaintiff's lead counsel settled before trial but still claimed over 400 billable hours collectively among the various attorneys and staff in the case. Even after the court reduced the

3

fees by 15% to 20% with other spot reductions, he still received $72,589.75 in fees and $6,930.65 in costs.

Although attorney fees are normally not considered as part of the amount in controversy, Cadle argues that such attorney fees are counted when they are claimed subject to a statutory provision. In this case, Rembert is pursuing attorney fees pursuant to W.Va. Code § 46A-5-104. Aggregating all of these amounts together, Cadle argues, more than meets the amount in controversy. Cadle attached exhibits to support its assertions. Rembert did not file a reply.

### III. Legal Standard

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chemical Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). The party seeking removal must show by a preponderance of the evidence that the amount in controversy exceeds $75,000. Id. A court determines the amount in controversy by looking at a snapshot of the time the Complaint was filed. St Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 291 (1938). While attorney fees and costs are typically excluded from the jurisdictional amount, such fees are countable when mandated by a contract or a statute. Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933).

4

## IV. Analysis

In this case, Rembert is seeking to avoid a loan contract, receive statutory damages for alleged violations of West Virginia debt collection law, and collect attorney fees and costs pursuant to a statute. Cadle claims that the amount due on the contract in August 2006 was $24,306.58, with interest accruing at $4.85 per day. While Rembert stipulates in its motion to remand that the amount recoverable in this lawsuit could not possibly exceed $74,500, the Court is not required to take that statement at face value. Rembert's main argument centers around the amount of the loan, which she asserts is only $11,700, and the statutory violations, which she asserts are "probably in the low digits." She does not address the issue of attorney fees.

Rembert has provided a copy of the contract, but has not provided any other evidence other than her bare assertions. Cadle, on the other hand, has provided persuasive evidence of plaintiff's counsel's billing practices in these types of cases. Cadle has provided copies of documents, including a signed affidavit from another case, in which plaintiff's counsel represented that the market rate for his services is between $300 to $450 per hour, and that he had been awarded fees at the $275 per hour rate in the majority of similar cases over the past four years.

Cadle also cites a case from the Southern District of West Virginia in which plaintiff's counsel, in a similar type of case which settled before trial, was awarded $72,589.75 in attorney fees and $6,930.65 in costs. Bostic v. Amer. Gen. Finance, Inc., 87 F. Supp. 2d 611, 620 (S.D.W.Va. 2000). The district court in Bostic reduced some attorney's hours by 15%, other attorney's hours by 20% and made certain other spot reductions before reaching this amount. Id. at 619.

Cadle also provided a copy of a dunning letter from August 11, 2006, which states that the balance due on the loan, as of that day, was $24,306.58 with interest accruing at $4.85 per day. Based upon the above evidence, the Court finds that Cadle has shown, by a preponderance of the evidence, that the jurisdictional amount has been met in this case. Even if the amount of compensatory damages on the contract were, as plaintiff claims, $11,700 and the statutory damages were only $12,000, very conservative estimates, the attorney fees and costs would only need to be at least $51,300.01. At $275 per hour, this equates to about 186.5 billable hours.

In Bostic, a case which settled before trial, plaintiff's counsel personally claimed 171.8 hours before reductions. 87 F. Supp. 2d at 619. This amount does not include hours from any of his associates, co-counsel, or assistants, which totaled over 400 hours.

6

<u>Id.</u> Consequently, were this case to go to trial and Rembert prevail at trial, it is more likely than not that the attorney fees and costs would exceed the jurisdictional amount when aggregated with even the most conservative estimates for compensatory and statutory damages. Of note in <u>Bostic</u> is that the total attorney fees and costs, even after reductions by the district court, still exceeded the jurisdictional amount without taking into account any other damages. 87 F.2d at 619.

## V. Conclusion

Consequently, for the reasons stated above, the Court **DENIES** Rembert's motion to remand (dkt. no. 8).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: January 16, 2008.

<u>/s/ Irene M. Keeley</u><br>
IRENE M. KEELEY<br>
UNITED STATES DISTRICT JUDGE